UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL WAYNE JONES,

                         Plaintiff,

              -v-

COMMISSIONER OF SOCIAL SECURITY

                        Defendant.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/22/2013

12 Civ. 6164 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Michael Wayne Jones brings this action pursuant to Section 205(g) of the Social

Security Act (the "Act"), Title 42, United States Code, Section 405(g), challenging a final

decision of the Commissioner of Social Security (the "Commissioner") finding him ineligible for

Supplemental Security Income ("SSI") disability benefits as of October 15, 2010.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the reasons discussed below, the Court concludes that Plaintiff was afforded a

full and fair hearing, that the Administrative Law Judge's ("ALJ") decision is free of legal error,

and that it is supported by substantial evidence in the record.  Accordingly, the Court grants the

Commissioner's motion for judgment on the pleadings and denies Plaintiff's cross-motion.

## PROCEDURAL HISTORY

On September 19, 2008, Plaintiff filed an application for disability insurance benefits

under the Social Security Act, alleging that he was disabled as of April 18, 2007.  (AR 8).

Following the Commissioner's denial of Plaintiff's application on initial administrative review,

Plaintiff requested an administrative hearing.  (*Id.*).  On June 25, 2010, ALJ Katherine Edgell

conducted a hearing, which Plaintiff attended with his counsel.  (*Id.*).  At the hearing, the ALJ

considered, among other things, Plaintiff's testimony and the testimony of physicians Dr.

Deepak Vasishtha, Dr. Walter Nieves, Dr. Barbara Akresh, and Dr. Lawrence Schulman.  After

reviewing the case *de novo*, the ALJ found that Plaintiff was not disabled (AR 8-19), which

became the Commissioner's final decision when the Appeals Council denied Plaintiff's request

for review on June 11, 2012 (AR 1-3).  *See Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999).

## BACKGROUND

The following facts are taken from the administrative record and are undisputed.  Plaintiff

was born in Alabama in 1966 and has a tenth-grade education.  (AR 24, 26).  From 1998 to 2007,

Plaintiff worked in a warehouse, loading and unloading boxes weighing up to sixty pounds.  (AR

26-27, 121-22).  Before that, he worked as a maintenance worker in a job that required him to lift

up to forty pounds in weight.  (AR 28, 121).

Plaintiff alleges he became disabled on April 17, 2007, after injuring his back at work.

X-rays taken of Plaintiff's lumbar spine, left hip, femur, and knee on the day after his accident

showed no fracture, dislocation, or other abnormality.  (AR 280-81).  On April 20, 2007,

Plaintiff was examined by Vasishtha, a physical medicine and rehabilitation physician.  (AR

240-44).  At that time, Plaintiff was five feet eleven and one-half inches tall and weighed 280

pounds, which Vasishtha described as "morbidly obese."  (AR 241).  Plaintiff told Vasishtha

that, since his accident a few days earlier, he had experienced lower back pain that radiated down

his left leg and decreased sensation to light touch over portions of his body.  (AR 240-41).

Vasishtha observed that Plaintiff had a slow, stiff gait with a limp and that his lumbar spine

forward flexion, extension, and lateral flexion were all reduced.  (AR 242).  His motor strength

for his upper extremities and right lower extremity were normal at 5/5, but his lumbar spine

motor strength was reduced to 4/5.  (*Id.*).  Vasishtha found that Plaintiff had acute lumbar disc

2

herniation, acute left-sided radiculitis, and an acute lumbar sprain/strain.  (AR 243).  He noted that Plaintiff "has significant difficulty ambulating without pain [for] more than half [a] city block[,] . . . has significant difficulty climbing up and down [stairs] and negotiating curbs and sidewalks," and has "poor balance . . . from pain in the left lower extremity and the back."  (AR 243).  He recommended further testing and prescribed the medications Medrol and hydrocodone. (AR 243-44).

Vasishtha examined Plaintiff approximately one month later.  At this examination, he noted that after a course of physical therapy and anti-inflammatory and pain medication, Plaintiff had made some improvements, but still had difficulty walking, even with a cane.  (AR 237-39). Vasishtha also opined that Plaintiff was "totally disabled," and he recommended that he not return to his job, which required heavy lifting and exertion.  (AR 239).  A lumbar spine magnetic resonance imaging ("MRI") from May 27, 2007, revealed a "normal study," with no sign of disc herniation, canal stenosis, or focal left lateral recess or left neural foraminal encroachment.  (AR 215).  At Plaintiff's next visit on June 20, 2007, Vasishtha performed an electrodiagnostic study that revealed "evidence of a bilateral L5-S1 radiculopathy."  (AR 245-49).[1]  From June through August 2007, Vasishtha continued to see Jones approximately once a month.  Vasishtha repeated, essentially, his previous clinical findings and continued to diagnose Plaintiff with herniated lumbar discs, notwithstanding the negative MRI.  (AR 227-30, 231-33, 234-36).

On July 25, 2007, Plaintiff was admitted to Nyack Hospital for three days because he was complaining of chest pain and palpitations.  (AR 172-76, 179-211).  Plaintiff noted that he had been "somewhat noncompliant" with his hypertension medication.  (AR 173, 175, 183).  The

---

[1]      Radiculopathy is disease of the nerve roots.  *See Dorland's Illustrated Medical Dictionary* 1562 (31st ed. 2007) ("*Dorland's*").

attending cardiologist diagnosed Plaintiff with atypical chest pain, malignant hypertension, and morbid obesity, among other things (AR 175, 189, 191), but Plaintiff's tests, which included an electrocardiogram and an echocardiogram, were negative (AR 179-82, 192-211).

On August 1, 2007, Schulman, an orthopedist, examined Plaintiff in connection with his Workers' Compensation claim.  (AR 263- 65).  Plaintiff complained of persistent, severe pain in his lower back that radiated down his left lower extremity, as well as marked tenderness over the left lumbar paravertebral areas and over the lower facet joints and left sacroiliac joint.  (AR 263). He also reported that he could stand or sit for only twenty minutes at a time, had limited lumbar range of motion, and could walk only up to one half of a city block.  (*Id.*).  Plaintiff also displayed a sensory deficit to pinprick and light touch over the left L5 dermatome.  (*Id.*). Schulman diagnosed Plaintiff with traumatic low back derangement with mechanical lumbar discogenic pain and left lumbar radiculopathy.  (*Id.*).  Based on the Workers' Compensation guidelines, Schulman concluded that Jones had a marked partial disability in his lower back and that he was capable of doing only minimal sedentary work for two hours a day.  (AR 263, 265).

In September and October 2007, Plaintiff saw Vasishtha twice more and told him that his "low back pain is now moderate in intensity at worst and averages between no pain to mild." (AR 221-23, 224-26).  Vasishtha noted that Plaintiff's lumbar spine range of motion had improved, as had his motor strength.  (AR 222-23, 225).  Vasishtha continued to diagnose Plaintiff with herniated lumbar spine discs, and he opined that Plaintiff was "unable to work" due to a moderate partial disability.  (AR 223-26).  On November 1, 2007, Vasishtha administered a nerve root block injection to treat Plaintiff's pain.  (AR 219-20).  Schulman examined Plaintiff again on November 7, 2007, and repeated much of his examination findings and his diagnosis, and noted that Plaintiff's "prognosis is uncertain," but that he would "estimate it to be poor to

4

fair." (AR 260-62). On December 3, 2007, Vasishtha examined Plaintiff, who complained of moderate low back pain and discomfort when sitting for prolonged periods of time. (AR 216-18). Vasishtha repeated most of his previous findings and diagnosis, but noted that Plaintiff had lost twenty-five pounds through dieting and exercise. (AR 217-218).

On April 22, 2008, Nieves examined Plaintiff and diagnosed him with a lumbar strain with radicular features. (AR 370). He reported that Plaintiff was attending physical therapy twice each week and that medications were helping control his pain. (*Id.*). Plaintiff was next examined by Schulman on May 8, 2008, at which point Plaintiff complained of back pain and diminished sensation over the L4L5 and S1 dermatome area. (AR 257-59). Schulman found that Plaintiff's left ankle and knee reflexes were diminished, and he diagnosed him with chronic lumbar discogenic disease with left lumbar radiculopathy and marked weakness of the left lower extremity. (*Id.*). Schulman determined that Plaintiff could not return to work as a dock worker, but "could work minimal light duty work or sedentary work with no repetitive bending, lifting, pushing or pulling of more than 5 to 10 pounds" for two to four hours a day. (*Id.*).

On June 2, 2008, Vasishtha examined Plaintiff, who stated that he could walk only one city block, that he fell frequently, and that he had moderate to occasionally severe lower back pain that radiated to his left lower extremities. (AR 251-52, 387-89). Vasishtha rated Plaintiff's upper and lower extremities' motor strength as 5/5, except for his left "myotomal muscles," which he rated 4- or 4 out of 5. (AR 389-90). Vasishtha opined that Plaintiff could not use public transportation, sit for extended periods of time, and needed help climbing stairs. (*Id.*). Nieves examined Plaintiff on June 17, 2008. Although he noted that Plaintiff was tolerating his medications, had "intact" sensations, and rated his motor power as 5/5, Nieves repeated his diagnosis of a lumbar strain with radicular features. (AR 367-68).

On December 29, 2008, Mustafa examined Plaintiff, who complained of persistent lower back pain, which was moderate in intensity.  (AR 379-80).  Mustafa's examination revealed that Plaintiff's muscle tone was within normal limits, but that he had decreased sensation over the left L5-S1 dermatome, tenderness in his lower back, and reduced active range of lumbar motion. (AR 380).  Mustafa diagnosed Plaintiff with "lumbosacral disc herniation along with bilateral 15-S 1 radiculopathy along with chronic sprain/strain of the lumbosacral spine and chronic pain syndrome."  (*Id.*).

Vasishtha next examined Plaintiff on January 12, 2009.  Vasishtha noted that Plaintiff had shown a "dramatic weight loss," which helped his symptoms and allowed him to "walk around a little easier for slightly longer distances and extended period[s] of time."  (AR 375-76). Although Plaintiff used a brace and did home exercises, he reported that his knee occasionally buckled and that his left leg was becoming weaker and slightly thinner.  (AR 375).  Vasishtha observed that Plaintiff had normal sensation and muscle tone, and repeated his previous diagnosis.  (AR 376-77).  The doctor noted that Plaintiff was working closely with a vocational training program to "find [him] some kind of trade, which would make him gainfully employed and get him back on the workforce," given that he could not return to a construction job.  (AR 377).

From January through August 2009, Nieves continued to see Plaintiff on a monthly basis and continued to diagnose with him with chronic lumbar strain.  (AR 345, 347, 349, 351, 353, 355).  At each examination, Nieves noted that Plaintiff's motor strength was 5/5 and his sensation was intact.  (*Id.*).  Plaintiff consistently stated that he tolerated his pain medications well (*id.*), but in April 2009, he reported that his back pain had worsened.  In August 2009, however, he reported that his pain was "under control" and that he was "doing well."  (AR 345).

6

Schulman examined Plaintiff on June 5, 2009, and noted that he continued to use a cane, "tended to exaggerate and magnify his symptomatology," and "exhibited an extremely low pain threshold." (AR 395). Schulman further observed that Plaintiff did not have an antalgic gait,[2] even though he was not receiving physical therapy, chiropractic treatment, or active pain management injection therapy. (*Id.*). On examination, Jones's back flexion was limited to twenty-five degrees due to muscle spasm. (*Id.*). A neurological examination of the lower extremities revealed a normal motor examination, and Schulman found a "questionable sensory deficit to pinprick or light touch over the left LS and S1 dermatomes." (*Id.*). Schulman diagnosed Plaintiff with chronic lumbar discogenic disease with left lumbar radiculopathy, and he determined that Plaintiff was "capable of light duty work with no repetitive bending, lifting, pushing or pulling over 5-10 lbs." (AR 395-96).

At his hearing on June 15, 2010, Plaintiff testified that he has constant radiating pain in his back and must use a cane and a back brace. (AR 25, 27-28, 33-35). He testified that he treats his pain with medication, which makes him drowsy (AR 28, 30), and that he participated in physical therapy until sometime in 2009. (AR 29-30, 33). Plaintiff testified that it is difficult for him to exercise, that he can lift approximately five pounds in weight, and that he can sit or stand for only about ten minutes at a time. (AR 33). Although he does crossword puzzles and watches television, he testified that he does not do housework, does not drive except in "emergency" situations, and does not attend any outside activities, other than semi-monthly shopping trips with his companion. (AR 24, 31-32, 139-40).

---

[2]     An antalgic gait is a limp adopted so as to avoid pain on weight-bearing structures, characterized by very short stance phase. *Dorland's* at 747.

## DISCUSSION

### A. Applicable Law

To qualify for disability benefits under 42 U.S.C. § 423(d)(1)(A), a plaintiff must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (internal quotation marks omitted). The Act also provides that the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Further, the disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner follows a five-step process to determine whether a claimant is entitled to disability benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920. The Second Circuit has described the process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

*Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court may set aside the Commissioner's determination that a claimant is not disabled, however, "only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)) (internal quotations marks omitted). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id*. at 447-48 (internal quotation marks omitted). It is a "very deferential standard of review — even more so than the 'clearly erroneous' standard." *Id*. at 148 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

Once the ALJ finds facts, a court can reject them only if "a reasonable factfinder would *have to conclude otherwise*." *Id*. (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Put another way, "it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record," *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998), and thus, "[w]here there is substantial evidence to support either [the Commissioner's or the Plaintiff's] position, the determination is one to be made by the factfinder," *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) ("Even where the administrative record may also adequately support contrary findings

9

on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)).

**B.  Analysis**

In this case, the ALJ applied the correct legal standard in determining that Plaintiff was not disabled by adhering to the five-step evaluation procedure outlined in the regulations. *See, e.g.*, *Gillespie v. Astrue*, No. 09 Civ. 2198 (ADS), 2012 WL 3646820, at *10 (E.D.N.Y. Aug. 23, 2012); 20 C.F.R. §§ 404.1520 & 416.920.  First, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2012, and that he had not engaged in substantial gainful activity since April 18, 2007.  (AR 12).  Second, the ALJ determined that Plaintiff's lumbosacral radiaculopathy, obesity, and hypertension were severe impairments within the meaning of 20 C.F.R. § 404.1520(c).  (*Id.*).  Third, she decided that Plaintiff's impairments did not meet or medically equal the impairments listed in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations.  (*Id.*).  Specifically, she found that Plaintiff's back condition did not meet the criteria for establishing disability *per se* under Section 1.04 of the listing of impairments and that his symptoms of hypertension "are not at listing levels."  (AR 13).  Therefore, she assessed Plaintiff's residual functional capacity and concluded that he could perform the full range of sedentary work as defined in 20 CFR 404.1567(a).  (*Id.*).  At the fourth step in the analysis, the ALJ found that Plaintiff was unable to perform his past relevant work as both a forklift operator and cleaner, as these jobs required "heavy work."  (AR 17).

At the fifth step in the analysis, the ALJ relied upon the medical vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework for her determination. She noted that Plaintiff was a "younger individual" (i.e., he was less than fifty years old at the time of the ALJ's decision), that he had a limited education, and that he was able to

communicate in English.  (*Id.*).  The ALJ concluded that Plaintiff retained sufficient residual

functional capacity, in combination with his age, education, and previous work experience, to

perform sedentary work and, thus, was not disabled under the Act.  (AR 17-18).

This decision is plainly supported by substantial evidence in the record.  The ALJ relied

primarily upon the findings of Schulman, Akresh, and Nieves, who all found that Plaintiff had

only mild limitations in his functional abilities.  For instance, Schulman opined in June 2009,

that Plaintiff was "capable of light duty work with no repetitive bending, lifting, pushing or

pulling over 5-10 [pounds]."  (AR 16, 396).  Akresh also found that Plaintiff had only moderate

limitations in his ability to ambulate for long distances or lift and carry heavy objects.  (AR 302).

Although Nieves found that Plaintiff was limited to an unspecified degree in lifting and carrying

objects and pushing or pulling, he determined that Plaintiff had no limitations in his ability to sit.

(AR 289-90).  Nieves also found that Plaintiff's motor strength was 5/5 and his sensation was

"intact."  (AR 365).  These findings are plainly a sufficient basis for the ALJ to conclude that

Plaintiff could perform sedentary work, which is performed primarily in a seated position and

involves lifting no more than ten pounds at a time.  *See* 20 C.F.R. § 404.1567(a).

### 1. Treating Physician Rule

The fact that Plaintiff's treating physician, Vasishtha, believed Plaintiff to be more

limited does not call for a different conclusion.  Under the Social Security regulations, the

medical opinion of a treating physician "on the issue(s) of the nature and severity of [an]

impairment" will be given controlling weight if that opinion "is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record."  *Burgess*, 537 F.3d at 128 (internal quotation marks

omitted); *accord Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).  On the

other hand, in situations where "the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts," the treating physician's opinion "is not afforded controlling weight."  *Id.* at 32; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given.").  When controlling weight is not given to a treating physician's opinion, the Regulations require the ALJ to "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33;

Here, the ALJ declined to afford controlling weight to Vasishtha's determinations that Plaintiff was totally disabled.  (AR 16).  As an initial matter, a number of these determinations were made in the context of Plaintiff's Worker's Compensation claims (AR 226, 243, 346, 352, 364, 378, 384), which are inapplicable to a claim for Social Security disability benefits.  *See* 20 C.F.R. § 404.1504; *DiPalma v. Colvin*, — F. Supp. 2d —, No. 12 Civ. 6708 (AJP), 2013 WL 3243554, at *16 (S.D.N.Y. June 28, 2013) (collecting cases).[3]  Indeed, although Vasishtha believed that Plaintiff's back condition precluded him from returning to his previous employment, he noted that Plaintiff was working closely with a vocational training program so that they "can find [him] some kind of trade, which would make him gainfully employed and get him back on the workforce."  (AR377).  Moreover, as the ALJ properly found (AR 15), Vasishtha was not qualified to give a general opinion as to whether Plaintiff could return to

---

[3]     Vasishtha's determinations that Plaintiff is "totally disabled" were either explicitly made on Worker's Compensation forms (*see* AR 378, 384), or were made before Jones filed his application for disability insurance on September 19, 2008 (*see, e.g.*, AR 223, 226, 229, 233, 236, 239, 243).

12

work, as "[i]t is the Commissioner who is responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability," and "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Micheli v. Astrue*, No. 11-4756-cv, 2012 WL 5259138, at *2 (2d Cir. Oct. 25, 2012) (quotation marks omitted); *see also Karle v. Astrue*, 12 Civ. 3933 (JGK) (AJP), 2013 WL 2158474, at *16 (S.D.N.Y. May 17, 2013) ("While [the treating physician] stated that '[t]his has been protracted and appears to be a permanent disability' and 'strongly advised [the claimant] to apply to permanent total disability,' the treating physician's opinion on disability is not given any special significance." (citation omitted)).

In any event, an ALJ is not required to give a treating physician's opinion controlling weight where it is contradicted by other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). Here, after reviewing the evidence, the ALJ found that "there is little evidence to support" Vasishtha's assessment that Plaintiff was unable to work. (AR 15). Vasishtha consistently reported that Plaintiff was disabled due to "multilevel disc herniation" (AR 229, 386), but, as the ALJ noted, an MRI of Plaintiff's spine showed no abnormalities and Nieves diagnosed his condition as a "lumbar strain" rather than a disc herniation (*see, e.g.*, AR 284, 347, 355, 361, 367). While Vasishtha frequently reported that Plaintiff had sensory and motor loss, Nieves reported normal motor power (5/5) and found that Plaintiff's sensation was "intact." (AR 367). Nieves also determined that although Plaintiff had a limited ability to lift and carry weight, he had no limitation on the time for which he could sit. (AR 289).[4] Akresh's examination also

---

[4]    The ALJ noted that "Dr. Nieves opined that the claimant is unable to work," and cited to a November 24, 2008 report. (AR 15). In the report, however, Nieves merely notes that Plaintiff "reports [that] he is unable to work as a result of" his pain. (AR 288). And although Nieves indicated on a number of Worker's Compensation forms that Plaintiff cannot do any type of work (*see* AR 346, 352, 364), as noted above, these findings are "of limited utility for disability

showed that Plaintiff had full strength in his upper and lower extremities, and full bilateral range

of motion in his hips, knees and ankles.  (AR 301).[5]  Schulman also reported that Jones "tended

to exaggerate and magnify his symptomatology," and "exhibited an extremely low pain

threshold."  (AR 395).  He noted that Jones was receiving no active treatment, no physical

therapy, no chiropractic treatment, and no active pain management injection therapy.  (*Id.*).

These constitute "good reasons" for disregarding the treating physician's opinion.  *Halloran*, 362

F.3d at 32-33.  Because of that, and because "it is up to the agency, and not this [C]ourt, to weigh

the conflicting evidence in the record," there is no basis to disturb the ALJ's findings.  *Clark*,

143 F.3d at 118.

    *2.  Jones's Credibility*

    Plaintiff next contends that the ALJ failed to provide reasons for discrediting his own

statements about his pain.  (Pl.'s Mem. 6-7).  In making a credibility determination about a

plaintiff's allegation of pain, the hearing officer "is required to take the claimant's reports of pain

and other limitations into account, but is not required to accept the claimant's subjective

complaints without question."  *Genier*, 606 F.3d at 49 (citations omitted).  Instead, the hearing

officer "may exercise discretion in weighing the credibility of the claimant's testimony in light of

the other evidence in the record."  *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.

1979)).  The ALJ must provide "specific reasons for the finding on credibility, supported by the

evidence in the case record."  SSR 96-7.  As the Second Circuit has explained, the regulations

purposes under the Social Security Act," as they are "geared to the person's prior employment
and allow findings of partial disability."  *See Fortier v. Astrue*, 09 Civ. 993 (RJS) (HBP), 2010
WL 1506549, at *24 (S.D.N.Y. Apr.13, 2010)).

[5]    Plaintiff incorrectly states that the ALJ "disregarded the report for the Consultant for
Social Security, Dr. Akeras."  (Pl.'s Mem. 10).  The ALJ's decision clearly addressed, and relied
upon, the report of "consultative examiner" Dr. Barbara Akresh (AR 15-16), who concluded that
"[t]here are moderate limitations in [Plaintiff's] ability to do strenuous activities" (AR 302).

provide a two-step process for evaluating a claimant's assertions of pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.* The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

*Genier*, 606 F.3d at 49. Applying the two-part framework, and referring specifically to SSR 96-7p, 1996 WL 374186, ALJ Edgell found that while "the record documents low back pain, hypertension and morbid obesity," the "objective evidence and physical examination findings do not fully support [Plaintiff's] allegations." (AR 14). This determination is also supported by substantial evidence.

In addition to the evidence discussed above, the ALJ found that hospital records from 2007 indicated that Plaintiff "appears comfortable," and that he is "somewhat noncompliant with his [hypertension] medications." (*Id.*). She observed that notwithstanding Plaintiff's complaints, his treatment was largely conservative and never required in-patient care. (AR 15-16). Although Plaintiff complained that his medications caused adverse side effects (AR 28, 30), he consistently told Nieves that he tolerated his medications well and that they helped his pain; and he frequently reported that he was "doing well." (AR 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, 367). The ALJ also noted that Plaintiff admitted told Akresh that he "watches television, listens to the radio, reads, goes to the store and doctors appointments, socializes with friends and plays bingo, cards and chess." (AR 15-16, 299). Considering all the evidence before

her, the ALJ concluded that despite his subjective claims of pain, Plaintiff could perform sedentary work.  (AR 16).  The Court is satisfied that the ALJ's findings were supported by substantial evidence in the record.  *See also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").

### 3. Additional Factors

Plaintiff next argues that the ALJ erred in failing to consider whether Plaintiff's limited ability in reading and writing would impact his ability to communicate and obtain gainful employment.  (Pl.'s Mem. 7).  A review of the ALJ's decision belies this claim.  The ALJ relied upon the medical vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, in making her determination, taking into account Plaintiff's residual functional capacity, age, education, and work experience.  Moreover, she specifically noted that Plaintiff's "limited education" and his ability to "communicate in English."  (AR 17).  Accordingly, this is no basis on which to disturb her conclusion regarding Plaintiff's ability to find employment.

Finally, Plaintiff asserts that the ALJ did not properly consider the effect of Plaintiff's obesity on his functional abilities.  (Pl.'s Mem. 10).  Obesity, however, "is not in and of itself a disability," and "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  *Guadalupe v. Barnhart*, No. 04 Civ.7644 (HB), 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005).  Instead, an ALJ's final determination "can constitute an appropriate consideration of the effects of obesity if it properly weighs evaluations by doctors that have accounted for the claimant's obesity."  *Paulino v. Astrue*, No. 08 Civ. 02813 (CM) (AJP), 2010 WL 3001752, at *18 (S.D.N.Y. July 30, 2010).  Here, the ALJ discussed Plaintiff's weight in the

context of the medical examinations by his physicians and considered the findings of the medical examiners as a whole.  (*See* AR 15).  Under these circumstances, the ALJ was not required to "single out" the claimant's obesity in her decision.  *Cruz v. Barnhart*, No. 04 Civ. 9011 (GWG), 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006).

## CONCLUSION

The Court has reviewed the entirety of the record and concludes that the ALJ's decision was free from legal error and is supported by substantial evidence.  Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED and Jones's cross-motion is DENIED.  The Clerk of the Court is directed to terminate the motions (Docket Nos. 9 & 11), and to close the case.

SO ORDERED.

Dated: August 22, 2013
       New York, New York

JESSE M. FURMAN
United States District Judge

17